IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| ALEXANDER ASA-KWAPONG, | ) | |
| | ) | |
| Petitioner | ) | Criminal No. 1:12-CR-416 |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | The Honorable Gerald Bruce Lee |
| | ) | |
| Respondent. | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
PETITIONER'S MOTION UNDER 28 U.S.C. § 2255**

The United States of America, through undersigned counsel, files this response in opposition to the motion filed by Petitioner Alexander Asa-Kwapong ("Petitioner") under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Petitioner alleges three grounds for relief: (1) ineffective assistance by his trial counsel (on multiple grounds), (2) that the government breached the plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C),[1] and (3) that the United States Probation Office ("Probation") incorrectly computed his offense level in the presentence investigation report ("PSR"). For the reasons set forth below, Petitioner's motion is wholly without merit, and the United States respectfully requests that this Court deny Petitioner's motion without holding an evidentiary hearing.

**I.  PROCEDURAL HISTORY AND RELATED BACKGROUND**

From approximately August 2007 until December 2011, Petitioner purchased stolen credit cards and committed credit card fraud against numerous companies, including travel

---

[1] Petitioner argues a breach under "Rule 11(C)(C)," but no such provision exists and from context, it appears that he is referring to section (c)(1)(C).

agencies and air carriers. Statement of Facts ¶ 2. A search warrant executed on Petitioner's residence revealed information from more than 500 stolen credit card accounts on Petitioner's computer, in his email accounts, and on mobile telephone devices within his residence. *Id.* ¶ 3. Petitioner's scheme resulted in thousands of fraudulent charges made on these credit card accounts, totaling at least $259,000. *Id.*

On September 20, 2012, a grand jury indicted Petitioner on two counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A. (Dkt. 1.) On motion of the government, this Court dismissed count two of the indictment (the second wire fraud count) on February 12, 2013, leaving only one remaining wire fraud count (the "wire fraud count"). (Dkt. 9.)

On November 28, 2012, Petitioner pleaded guilty to counts one and three of the indictment. (Dkt. 10.) As a part of this plea agreement, the government and Petitioner agreed that the defendant's offense level regarding the wire fraud count was twenty-four, which was derived from a base offense level of seven (under § 2B1.1(a)(1) of the United States Sentencing Guidelines), as adjusted by various enhancements and a three-point reduction for acceptance of responsibility. Plea Agreement ¶ 4. One such enhancement was a twelve-point enhancement pursuant to § 2B1.1(b)(1)(G) of the United States Sentencing Guidelines, based on Petitioner's fraudulent activity having resulted in a loss of between $200,000 and $400,000.[2] *Id.* Because Petitioner was a Criminal History Category I, his guideline range as to the wire fraud count was fifty-one to sixty-three months of incarceration. *See* U.S. Sentencing Guidelines Manual ch. 5, pt. A (2012). As to the aggravated identity theft count, the United States Code mandates a

---

[2] This stipulated loss is consistent with the statement of facts agreed to by both parties, in which both parties agreed that the Petitioner's criminal activity resulted in a loss of at least $259,000. Statement of Facts ¶ 3.

sentence of twenty-four months imprisonment, to be served consecutive to any other term of imprisonment imposed. *See* 18 U.S.C. § 1028A (2012). This mandatory sentence was also outlined in the plea agreement. *See* Plea Agreement ¶ 1. This meant that Petitioner faced a total of between seventy-five and eighty-seven months were he to be sentenced within the guideline range on the wire fraud count. In its sentencing memorandum, the United States then recommended seventy-five months of incarceration, fifty-one months on the wire fraud count (the low end of the guideline range outlined above) and twenty-four months on the aggravated identity theft. Gov't's Sentencing Memorandum at 1.

Probation, in its PSR, disagreed with the stipulated offense level of twenty-four. The probation officer calculated that Petitioner intended a loss of $449,502.15, Presentence Investigation Report ¶ 22, resulting in a fourteen-point enhancement to Petitioner's base offense level under § 2B1.1(b)(1)(H) of the United States Sentencing Guidelines, *id.* at Worksheet A. Given the plea agreement, however, the United States explicitly declined to adopt this finding and instead used the previously agreed to twelve-level enhancement, resulting in an offense level of twenty-four. *See* Gov't's Sentencing Memorandum at 2 & n.1.

On February 20, 2013, this Court followed the government's recommendation and sentenced Petitioner to a total of seventy-five months imprisonment—fifty-one months as to the remaining wire fraud count and twenty-four months as to the aggravated identity theft count—followed by three years of supervised release. (Dkt. 28.) Petitioner was also ordered to pay $377,076.51 in restitution. (Dkt. 33.)

On October 18, 2013, Petitioner filed an affidavit in support of a motion under 28 U.S.C. § 2255 but failed to file a corresponding motion. (Dkt. 34.) As a result, on October 29, 2013,

this Court denied Petitioner's affidavit and dismissed the action without prejudice. (Dkt. 35.) Petitioner then filed a new affidavit in support of a motion under 18 U.S.C. § 2255, this time with a motion, on December 2, 2013. (Dkt. 36-37.) This Court ordered the government's response on February 14, 2014. (Dkt. 38.)

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 2255(a), a prisoner in federal custody may attack his sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or federal law, (2) the court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a) (2012). Accordingly, Petitioner attacks his sentence on three grounds, alleging that his trial counsel was ineffective, that the government breached his plea agreement, and that Probation incorrectly calculated his guidelines sentence.

Claims of ineffective assistance of counsel are evaluated under the rigorous two-pronged test set forth in *Strickland v. Washington*, which requires a showing that both (1) the performance of counsel "fell below an objective standard of reasonableness" (the "performance prong") and (2) this resulted in actual prejudice to the defendant (the "prejudice prong"). 466 U.S. 668, 687-88 (1984). These requirements apply equally to an ineffective assistance of counsel claim arising in the context of a plea agreement. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

To satisfy the performance prong, Petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness" based on "prevailing professional norms." *Strickland*, 466 U.S. at 688. This requires a showing of "errors so serious

that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction" and because a wide range of legitimate defense strategies are possible in any given case, a reviewing court's "scrutiny of counsel's performance must be highly deferential." *Id.* at 688-89. Indeed, in order to avoid "the distorting effects of hindsight . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

To satisfy the prejudice prong, Petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. As a result, Petitioner must show more than the mere presence of errors that "had some conceivable effect on the outcome of the proceeding." *Id.* at 693; *see also United States v. Frady*, 456 U.S. 152, 170 (1982) ("[Petitioner] must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."). In evaluating the prejudice prong, a court "must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695-96 ("Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The burden of proof lies with the defendant as to both prongs of the *Strickland* test. *United States v. Luck*, 611 F.3d 183, 186 (4th Cir. 2010).

5

**III.     ARGUMENT**

    **A.     Petitioner Has Failed to Establish that Counsel Was Ineffective.**

Petitioner alleges that his defense counsel provided ineffective assistance of counsel,[3] on the grounds that defense counsel allegedly: 1) promised Petitioner that he would only be sentenced to a term of probation; 2) did not keep the defendant informed of important developments or tactical decisions; 3) did not object to Probation's findings in the PSR; 4) did not put up a defense or file a motion; and 5) had a conflict of interest.  Each argument will be addressed in turn.

    *1. Petitioner waived his right to appeal his sentence and was also made aware of the possible sentence he was facing by defense counsel, among others.*

"A plea agreement is essentially a contract between an accused and the government and is therefore subject to interpretation under the principles of contract law." *United States v. Davis*, 689 F.3d 349, 353 (4th Cir. 2012) (per curiam) (internal quotation marks omitted).  As part of a plea agreement, like a contract, rights may knowingly be forfeited.  Thus, a defendant may waive his right to appeal, if his waiver is the product of a knowing and intelligent decision.  *United States v. Broughton-Jones*, 71 F.3d 1143, 1146 (4th Cir. 1995).  And neither the government nor the defendant "should be able, any more than would be private contracting parties, unilaterally to renege or seek modification simply because of uninduced mistake or change of mind." *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir. 1986).

In this case, the defendant did waive this right by agreeing to forfeit the right to appeal any sentence within the statutory maximum.  Plea Agreement ¶ 5 ("[T]he defendant knowingly

---

[3] It should be noted that Petitioner explicitly agreed, in signing his plea agreement, that he was satisfied that his attorney had "rendered effective assistance." Plea Agreement ¶ 3.

waives the right to appeal the conviction and any sentence within the statutory maximum described above . . . on any ground whatsoever, in exchange for concessions made by the United States in this plea agreement."); *see also id.* ("The United States makes no promise or representation concerning what sentence the defendant will receive, and the defendant cannot withdraw a guilty plea based upon the actual sentence."). The defendant, in signing the plea agreement, agreed that this waiver was knowing, *id.*, and makes no claim now that it was not.

Rather, the defendant tries to wiggle out of his end of the bargain by arguing that his attorney promised him probation. Pet'r's Mot. ¶ 9 Ground 1(i). Not only is this bare, unsupported assertion insufficient to reinstate the defendant's already-waived right to appeal, but it is also contradicted by the facts at hand. First, defense counsel made clear to Petitioner that sentencing was exclusively within the judge's discretion. Atty' Certification ¶ 6. This was also emphasized in the plea agreement that the defendant signed. *See* Plea Agreement ¶ 4 ("The defendant understands that the Court has jurisdiction and authority to impose any sentence within the statutory maximum described above [and] that the Court has not yet determined a sentence and that any estimate . . . the defendant may have received from the defendant's counsel . . . is a prediction, not a promise, and is not binding . . . ."). Further, Petitioner's plea agreement outlines in the very first paragraph the thirty-year maximum sentence that he faced on the wire fraud count as well as the *consecutive* two-year sentence that he *indisputably would face* on the aggravated identity theft count. Plea Agreement ¶ 1.

The plea agreement then goes on to explain the Petitioner's stipulated offense level under the sentencing guidelines, without any mention of probation. *Id.* ¶ 4. In fact, while Petitioner curiously never explains when exactly his counsel allegedly promised him probation, his plea

agreement does not mention the possibility of a sentence of probation even once. *See generally* Plea Agreement.

Even more significant is that Petitioner signed the plea agreement on October 10, 2012, Plea Agreement at 13, almost two months before the plea was entered and four months before sentencing. This gave Petitioner ample time to consider the maximum sentence—not to mention the guaranteed sentence on the aggravated identity theft count—outlined in the first paragraph of the plea agreement, as well as his waiver of his right to appeal any legally permissible sentence. Thus, even putting aside Petitioner's appeal waiver and even assuming that Petitioner's counsel had promised him probation, any prejudice was obviated by the explicit discussion of the sentence Petitioner faced in the plea agreement. *Cf. United States v. Lambey*, 974 F.2d 1389, 1395 (4th Cir. 1992) (holding that any error in counsel's advice would be obviated by a Rule 11 colloquy that "correct[ed] or clarifie[d] the earlier erroneous information given by the defendant's attorney [when] the defendant admits to understanding the court's advice").

> 2. *Petitioner was kept informed of developments in his case, including plea negotiations and defense counsel's tactical decisions.*

The defendant's second ineffective assistance of counsel argument is that his attorney did not "keep[ him] informed of important developments in the course of the Trial; involving plea negotiations, or keeping [him] abreast to any tactical decisions that were made in [his] defense." This bare assertion is unsupported by any facts or evidence, and is belied by the facts at hand.

Counsel has affirmed that "[t]hroughout the course of representation" he met with Petitioner and kept him apprised of the case's progress. Atty' Certification ¶ 2. These meetings included a thorough exploration of the government's evidence that resulted in a mutual decision

to enter into a plea agreement based on the government's overwhelming evidence of the Petitioner's guilt. *See id.* ¶¶ 4-5. Counsel's performance in this regard fell within the range of reasonably effective assistance under *Strickland*.

To the extent that the Court determines that counsel erred, however, Petitioner's burden of proof on this matter should be emphasized. Not only does Petitioner have the burden to prove that counsel's performance was professionally unreasonable, but he also must prove that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Petitioner makes no such claim. Rather, counsel has emphasized that Petitioner agreed with his assessment "that the Government's case was strong and a trial would likely result in a conviction and a much longer sentence . . . ." Atty' Certification ¶ 2; *see also id.* ¶ 5 ("After reviewing the United States' evidence against Petitioner, as well as Petitioner's admissions made to officers, Petitioner agreed with Counsel's advice to enter into a plea agreement with the United States."). Petitioner makes no claim—and presents no evidence—that, had he known such information at the time, he would have changed his decision to plead guilty, as *Hill* demands. *See Missouri v. Frye*, 132 S. Ct. 1399, 1405-06 (2012) ("[T]he defendant [in *Hill*] had not alleged that, even if adequate advice and assistance had been given, he would have elected to plead not guilty and proceed to trial. Thus, the Court found that no prejudice from the inadequate advice had been shown or alleged."). In fact, Petitioner presents no factual basis for his claims at all, instead presenting only a general argument that he was not informed of some unknown things at some unknown times.

9

Nor is it plausible to think that Petitioner would have chosen to plead not guilty and go to trial were he as informed as he wished to have been. This is not a case where counsel failed to present a plea offer to Petitioner, *see Frye*, 132 S. Ct. at 1404, or where counsel's inadequate advice led Petitioner to reject a plea offer, *see Lafler v. Cooper*, 132 S. Ct. 1376, 1383 (2012). Rather, Petitioner had full knowledge both of the plea (as evidenced by his having accepted it) and of what he faced should he decide to go to trial. *See* Atty' Certification ¶ 5 (explaining defense counsel's discussion with Petitioner regarding the strength of the government's evidence).

> 3. *Defense counsel's failure to object to the loss calculation in the PSR in no way affected Petitioner's sentence and did not prejudice him in any way.*

Petitioner alleges error based on counsel never having objected to the PSR, but this argument is based on the erroneous assumption that the PSR "altered the [Plea] agreement." *See* Pet'r's Mot. ¶ 9, Ground 1(ii) (alteration in original). This was not possible and did not occur.

First and foremost, Petitioner misunderstands the function of a PSR. Most importantly, a PSR cannot, in any way, alter the binding contract that is a plea agreement. *Cf. Santobello v. New York*, 404 U.S. 257, 262 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."). Furthermore, in spite of the weight that Petitioner attributes to the PSR, its findings are far from treated as gospel. For one, each party has the right to object to any of the PSR's findings. *See* Fed. R. Crim. P. 32(f) (outlining procedure for parties to object to the PSR). Even with respect to the parts of the PSR that neither party finds objectionable, the judge need not necessarily adopt this portion of the report. *See id.*

32(i)(3)(A) ("[T]he court *may* accept any undisputed portion of the presentence report as a finding of fact . . . ." (emphasis added)).

Although the PSR concluded that the intended loss of Petitioner's criminal activity exceeded $400,000, PSR ¶ 22, the government agreed as part of the plea agreement that the agreed loss for purposes of sentencing would be $259,000, *see* Statement of Facts ¶ 3; Plea Agreement ¶ 4. Upon entering into this binding contract, the issue of loss for purposes of sentencing became a settled one. In fact, in its sentencing memorandum, the government specifically disavowed the PSR's conclusions on the loss amount, recognizing the binding plea agreement made with Petitioner. *See* Gov't's Sentencing Memorandum at 2 n.1.

At bottom, whether defense counsel had objected or not would have made no difference. Even if failure to object had been error, Petitioner cannot show that he was prejudiced in any way, because any error by defense counsel in failing to object "would have been effectively 'quarantined' " by the fact that both parties had already agreed to the loss amount in the plea agreement. *Cf. United States v. Smith*, 497 F. App'x 269, 274 (4th Cir. 2012) (finding no prejudice where defense counsel failed to object to the Guideline range because defendant had already waived his right to appeal the established range anyway). Petitioner "cannot show that, but for counsel's failure to object, there is a 'reasonable probability' that he would have received a shorter sentence." *Id.* (quoting *Strickland*, 466 U.S. at 694). He would have received the same sentence based on the same loss figure that the government had already agreed to adopt upon signing the plea agreement.

> *4.     Defense counsel's decision not to defend the charges at trial or file any motions was a strategic choice within the range of reasonable professional assistance required by Strickland.*

Petitioner next takes issue with defense counsel's failure to "put up a defense" or "file[] any motion." Pet'r's Mot. ¶ 9, Ground 1 (iii).  But this argument is nothing more than a quibble with defense counsel's strategy, something which the *Strickland* analysis forbids.

When evaluating defense counsel's performance, it is presumed that his chosen strategy be deemed to be sound.  *Strickland*, 466 U.S. at 689.  Petitioner must overcome the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance."  *Id.*  A court must consider "not what is prudent or appropriate, but only what is constitutionally compelled."  *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984).  "Counsel is not ineffective merely because he overlooks one strategy while vigilantly pursuing another." *Williams v. Kelly*, 816 F.2d 939, 950 (4th Cir. 1987).  What *Strickland* requires is that Petitioner prove that "counsel's representation fell below an objective standard of reasonableness" based on "prevailing professional norms."  466 U.S. at 688.

This does not necessarily mean that defense counsel must, or even should, go to trial and put on a defense or even file any motions.  Rather, it may even be proper for defense counsel strongly to encourage a client to plead guilty.  *See Jones v. Murray*, 947 F.2d 1106, 1110-11 (4th Cir. 1991) (holding that defense counsel's "vigorous attempt" to convince his client to change his mind and plead guilty was not improper).

In general, "a heavy measure of deference to counsel's judgments" is required under *Strickland*. 466 U.S. at 691. One of these judgments is counsel's judgment as to whether a defendant should accept a guilty plea. *Cf. Stout v. Netherland*, 95 F.3d 42 at *8 (4th Cir. 1996) (per curiam) ("[W]e conclude that Bobbitt's recommendation of an unconditional guilty plea did not fall outside the broad range of professional competence.").

Petitioner takes issue with defense counsel's decision not to "put up a defense[,]" but failure to present evidence is still a strategic decision within the definition of *Strickland* and is not necessarily ineffective performance. *See Burger v. Kemp*, 483 U.S. 776, 788, 794-95 (1987) (finding no ineffective assistance of counsel despite defense counsel presenting "no mitigating evidence at all" at either of defendant's sentencing hearings given "that there was a reasonable basis for [t]his strategic decision").

Even if Petitioner can overcome this first bar—that is, even if he can prove that defense counsel's representation *was* objectively unreasonable—he still must prove prejudice. He must prove that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Petitioner provides no proof to this effect and makes no claim that this is the case.

As defense counsel notes, Petitioner and he both agreed that the proof against the defendant was overwhelming. Att'y Certification ¶ 5. And Petitioner never disputes that. While Petitioner complains that defense counsel failed to file any motions, for example, he fails to explain *any* basis—much less a plausible one—for a motion that even *could have* been filed. *Cf. United States v. Fortner*, 117 F. App'x 244, 247 (4th Cir. 2004) (per curiam) ("[Petitioner] states that counsel should have called witnesses on his behalf, but does not identify the potential

13

witnesses or indicate their relevance."). A bare assertion of belief by Petitioner that he does not think, in essence, that defense counsel "put up a[ny] defense" does not make it reasonably probable that Petitioner would not have gone forward with the guilty plea had defense counsel acted differently.

### 5. Conflict of interest

Petitioner's fifth argument regarding his counsel's assertedly ineffective assistance is that defense counsel had a conflict of interest "*after the plea was entered*" when defense counsel "used tactics[] to renegotiate retainer fees, and lost interest in representing" Petitioner. Pet'r's Mot. ¶ 9, Ground 1(iv) (emphasis added).

Again, defense counsel's conduct can only be considered ineffective in the context of a plea agreement if the Petitioner can prove that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. But in order for such a decision to be made, it is necessarily so that the asserted errors must have occurred *before* the guilty plea is entered. That is, the conflict must have occurred before that time. That Petitioner alleges a conflict of interest on the part of defense counsel only *after* the plea was entered means that, ipso facto, any conflict that may or may not have occurred could not have had an effect on Petitioner's decision to plead guilty.

Furthermore, Petitioner has yet to demonstrate any actual conflict of interest. Although a defense counsel's financial interest may be a possible conflict of interest, *see United States v. Magini*, 973 F.2d 261, 264 (4th Cir. 1992), "the possibility of conflict is insufficient to impugn a criminal conviction." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). Rather, "a defendant must establish that an *actual* conflict of interest adversely affected his lawyer's performance." *Id.*

14

(emphasis added).  In order to prove the existence of an actual conflict of interest, "a habeas petitioner must show that his interests diverged from his attorney's with respect to a material factual or legal issue or to a course of action." *Stephens v. Branker*, 570 F.3d 198, 209 (4th Cir. 2009) (internal quotation marks and alterations omitted).  Once a petitioner has proven the existence of an actual conflict, he must then establish that this actual conflict "compromised his attorney's representation." *Id.*

Regarding a financial conflict of interest, as Petitioner alleges, if defense counsel "was not influenced by private pecuniary concerns or did not choose between conflicting interests, the simple possibility of a conflict would not support a claim of a Sixth Amendment violation." *Magini*, 973 F.2d at 264.  In *Magini*, the petitioner "point[ed] to several specific facts that suggest[ed] an actual conflict . . . and allege[d] that [defense counsel] chose a course of action which furthered his interest and diminished hers . . . ." *Id.*  Petitioner points to no specific facts and suggests no actual conflict, which makes sense because the only possible conflict he has put forth is the one did not arise until *after* the plea was entered.

### B.   The Government Did Not Breach the Plea Agreement.

"It is settled that a defendant alleging the Government's breach of a plea agreement bears the burden of establishing that breach by a preponderance of the evidence." *United States v. Snow*, 234 F.3d 187, 189 (4th Cir. 2000).  In this case, Petitioner has failed to meet this burden, for his argument is based on pure mistake of fact.

Petitioner argues that his guilty plea promised him that he would only be subjected to a guideline range of between seventy[4] and eighty-seven months.[5]  Pet'r's Mot. ¶ 9, Ground 2.  This

---

[4] It appears that this number should be seventy-five months, since this would have been the bottom end of the guideline range for Petitioner if the bottom end of the guideline range on the wire fraud count (fifty-one

is true. *See* Plea Agreement ¶¶ 1, 4. Where Petitioner's argument falters is that he then argues that the PSR "bounded" him to a guidelines range of 87-108 months. Pet'r's Mot. ¶ 9, Ground 2. As was explained above, the PSR did nothing—and could *not* do anything—to change the government's prior agreement with Petitioner. The government adhered to the guideline range discussed in the plea agreement[6]—and explicitly made clear in its sentencing memorandum that the government was *not* following the guideline range in the PSR.

### C. The Probation Department's Offense Level Computation Had No Bearing on the Defendant's Sentence, Regardless of its Correctness.

Petitioner argues that the sentence imposed upon him was the "result of an incorrect application of the sentencing guidelines." Pet'r's Mot. ¶ 9, Ground 3(i). He then continues on to argue that the bottom end of his guideline range was seventy months and that this Court varied nineteen months below that in order to come to the ultimate sentence of fifty-one months on count one of the indictment. *Id.* at Ground 3(ii). Petitioner then reasons that because the bottom end of his guideline range should have been fifty-seven months, then, had the Court applied that same nineteen-month variance, Petitioner would only have been sentenced to thirty-eight months[7] on count one. This argument fails from the beginning.

The problem with Petitioner's reasoning is that it discounts the role of the aggravated identity theft count in his sentencing, resulting in an improper calculation of his guideline range. The Court did *not* vary downward by nineteen months from a guideline range with a lower

---

months) were added to the consecutive twenty-four months for the aggravated identity theft count. Because much of Petitioner's argument relies more on the proportions of his numbers and less on their independent accuracy, his numbers will be used when feasible.

[5] It is worth noting that Petitioner's explicit acknowledgment of this promise undercuts his argument that his attorney allegedly promised that he would only receive probation. *See* Pet'r's Mot. ¶ 9, Ground 1(i).

[6] This is discussed in great detail in the next section.

[7] Petitioner says thirty-nine months in his petition, but his reasoning seems to indicate that he intended to say thirty-eight months.

bound of seventy months. Rather, the Court sentenced the defendant at the seventy-five month (seventy month) lower bound of the guideline range. That is, the bottom end of Petitioner's guideline range on the wire fraud count was *already* at fifty-one months. This figure was then added to the mandatory twenty-four month sentence on the aggravated identity theft count to create the seventy-five month (seventy month) figure. What Petitioner mistakes for a variance is merely the failure to include the consecutive twenty-four month sentence that the Court was statutorily bound to impose for the aggravated identity theft count.

The fourth paragraph of the plea agreement calculates Petitioner's adjusted offense level as being twenty-seven, *see* Plea Agreement ¶ 4, and after the defendant was given the three-point reduction for acceptance of responsibility, the total offense level was twenty-four. Petitioner does not dispute that this was his agreed offense level. *See* Pet'r's Mot. ¶ 9, Ground 3(i). An offense level of twenty-four, for criminal history category I, has a guideline range of between fifty-one and sixty-three months. *See* U.S. Sentencing Guidelines Manual Ch. 5, Pt. A. This is the guideline range that the government calculated in its sentencing memorandum, *see* Gov't's Sentencing Memorandum at 2, and the government then requested that the defendant be sentenced at the bottom end of this range, *see id.* at 6. The Court agreed, sentencing the defendant to fifty-one months on count one, the wire fraud count. (*See* Dkt. 28.)

It is only once this fifty-one months was combined with the mandatory consecutive twenty-four months for the aggravated identity theft charge that this number became seventy-five months; that is, rather than downwardly varying from seventy-five to fifty-one, the Court merely—and properly—discounted the aggravated identity theft count when deciding what sentence to impose on the wire fraud count.

The Court sentenced Petitioner right at the bottom of the guideline range; no variance was made. There was no incorrect application of the guidelines, and, as outlined above, Probation's differing offense level calculation did not affect the governent's sentencing recommendation, nor did it appear to alter this Court's ultimate sentence.

### D. Petitioner is Not Entitled to an Evidentiary Hearing.

"A federal court in a habeas proceeding must hold an evidentiary hearing when the petitioner alleges facts which, if true, would entitle [that individual] to relief." *Magini*, 973 F.2d at 264. With respect to Petitioner's claims, an evidentiary hearing is not required because the record before the Court is adequate to dispose of the allegations. *See, e.g.*, *Mueller v. Angelone*, 181 F.3d 557, 586-87 (4th Cir. 1999) (concluding, in the context of a § 2254 claim, that where the petitioner's factual contentions, even if true, would not justify habeas relief, then the district court may resolve the petition without an evidentiary hearing).

Where, as here, a petitioner includes only vague, conclusory allegations, there is no need for an evidentiary hearing. *See Raines v. United States*, 423 F.2d 526, 531 (4th Cir. 1970) ("It is within the discretion of the district judge to deny without a hearing Section 2255 motions which state only legal conclusions with no supporting factual allegations. Allegations of a vague, conclusory or palpably incredible nature do not raise factual issues which require a full hearing." (quotation marks and citations omitted)). For the reasons detailed above, Petitioner has failed to raise any meaningful factual dispute. As explained in detail above, most of what Petitioner has put forth as fact is factually incorrect. However, even with regard to Petitioner's claims that are not demonstrably false, the asserted errors, even if true, did not prejudice Petitioner in any way and thus would not entitle him to relief.

## IV. CONCLUSION

For the reasons stated above, the United States respectfully requests that this Court deny Petitioner's motion without holding an evidentiary hearing.

        Respectfully submitted

        DANA J. BOENTE
        ACTING UNITED STATES ATTORNEY

BY:       /s/
        Jason M. Scheff
        Special Assistant United States Attorney
        Ryan Dickey
        Assistant United States Attorney
        Counsel for the United States
        United States Attorney's Office
        2100 Jamieson Avenue
        Alexandria, Virginia 22314
        Phone: 703-299-3814
        Fax: 703-299-3980
        jason.scheff@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 9, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.  And I hereby certify that I will mail the foregoing by U.S. mail to the following non-filing user:

      Alexander Asa-Kwapong, Register No. 81317-083 (MVCC)
      555-I GEO Drive (Unit A/3)
      Philipsburg, Pennsylvania 16866-8139

                /s/
            Jason M. Scheff
            Special Assistant United States Attorney
            Counsel for the United States
            United States Attorney's Office
            2100 Jamieson Avenue
            Alexandria, Virginia 22314
            Phone:  703-299-3814
            Fax:  703-299-3980
            jason.scheff@usdoj.gov